# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF WEST VIRGINIA
# CLARKSBURG

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                         Criminal Action No. 1:16-CR-23
                                         (JUDGE KEELEY)

SCOTT ALAN THOMAS,

        Defendant.

## REPORT AND RECOMMENDATION/OPINION
## RECOMMENDING THAT DEFENDANT'S MOTION TO SUPPRESS BE DENIED

This matter is before the Court pursuant to Defendant Scott Alan Thomas' "Motion to Suppress" filed on July 11, 2016 (ECF No. 29). United States District Judge Irene M. Keeley referred the pending motion to the undersigned for a Report and Recommendation on July 12, 2016 (ECF No. 31). The United States ("Government") filed a Response to Motion to Suppress on July 29, 2016 (ECF No. 32). A hearing on this matter was held before the undersigned on August 26, 2016.

## I. Factual Background

The following is derived from Masontown Police Officer Stemple's "Affidavit and Complaint for search warrant" dated December 1, 2015 (ECF No. 29-1), a second "Affidavit and Complaint for search warrant" dated December 3, 2016 (ECF No. 29-2), Officer Stemple's Narrative Report (ECF No. 41-2), and oral arguments at the Motion hearing on August 26, 2016.

### A. Initial Welfare Check

On November 30, 2015, Officers Stemple and Hoefler of the Masontown Police Department ("MPD") performed a welfare check on Madeline Ennis at 47 Walnut Street in

Masontown, West Virginia (ECF No. 29-1 at 3). The MPD received a report from a complainant, relaying a report from Ennis' daughter (identified in the affidavit as "Confidential Witness," hereinafter "CW"), that Defendant had "become a problem" and had been "drinking alcohol heavily and had been acting aggressive towards Ennis lately." (ECF No. 41-2 at 1). Ennis told CW that she planned to tell Defendant that he had to move out, and Ennis had not been seen or heard from since, a "few days prior" to the welfare check (ECF No. 29-1). CW was worried about Ennis because she used to see or hear from her almost every day (ECF No. 41-2 at 1). During the welfare check on November 30, 2015, Officers found Ennis at home. She told them that "everything was okay, but that she was scared and wanted [Defendant] to move out." (ECF No. 29-1). Ennis confirmed that Defendant had been "drinking a lot more lately and has been acting aggressive and she no longer wants him to stay there." (ECF No. 41-2 at 1). Officer Stemple "explained the Domestic Violence Protective Order process to Ennis as well as informing her of her rights to file a Wrongful Occupation or Civil Suit on Thomas if he refused to leave." Id. "Ennis requested that [officers] stop in and check on her every once in awhile until he is gone." Id.

The officers did not search Defendant's bedroom at the time of the welfare check, and the record does not indicate that officers entered the home, but they did continue to investigate further (ECF No. 41-2 at 1). Following the welfare check, Officer Stemple called CW to let her know that Ennis was okay. Id. During this phone call, CW told Officer Stemple the following:

> After she found out that Thomas was a sex offender and began worrying about Ennis, she went over to the residence while Thomas was not home. She advised that she went into his bedroom and could smell [m]arijuana. She stated that he had several fans in the bedroom to pull the odor out of the window. She also stated that she saw a black in color synthetic style rifle without a scope leaning in the corner against the wall. She advised that it was loaded. [CW] went on to explain that Thomas came home while she was there and she told him that he needed to remove the firearm from Ennis' house. She asked if it was loaded and Thomas stated "yes." She stated that he said he had it there, "to make

> Ennis feel safe." [CW] advised that she would sign a written statement swearing to the aforementioned facts.

ECF no. 41-2 at 1.

The address in CW's report was the same address known to the officers to be Defendant's residence, corroborating that part of CW's report (ECF No. 29-1). Officer Stemple researched Defendant's criminal history and discovered, in addition to corroborating CW's claim that Defendant was a sex offender, that Defendant's complete criminal history was voluminous.[1] The law enforcement printout included felony convictions[2] that prohibited Defendant from possessing firearms under W. Va. Code § 61-7-7(b)(1), as well as a history of arrests, charges, and convictions for firearm-related offenses.[3] (ECF No. 29-1; See also ECF No. 41-2).

At this point, Officer Stemple summarized this information in an affidavit in support of the first search warrant. He did not identify either of the informants by name; just as a complainant, and "another confidential witness." (ECF No. 29-1). Not all of the details known and reported to Officer Stemple as recorded in his narrative report were included in the affidavit presented to the Magistrate. Id. See also Footnote 4. Officer Stemple requested to search Defendant's bedroom for the rifle he was reported to illegally possess there, as well as a vehicle registered to Defendant (in which the firearm could also feasibly be stored) (ECF No. 29-1).

---

[1] Defendant's criminal history printout spans forty-seven (47) pages of various law enforcement contact of varying degrees across multiple states. Some charges are identified as ending in convictions; some were not prosecuted, and others are inconclusive as to status (it is unclear whether they ultimately resulted in a conviction).

[2] The Indictment (ECF No. 2) in this case lists Defendant's prior convictions as follows:
   1) Lewd and Lascivious Assault Upon a Child on October 12, 1990;
   2) Driving While License Suspended or Revoked (Habitual Offender) on June 3, 2004;
   3) Driving While License Suspended or Revoked (Habitual Offender) on March 15, 2006;
   4) Driving While License Suspended or Revoked (Habitual Offender) on March 15, 2006;
   5) Possession of a Firearm by a Convicted Felon on July 29, 2009;
   6) Carrying a Concealed Weapon on July 29, 2009;
   7) Failure of Sex Offender to Properly Register on July 29, 2009; and
   8) Breaking and Entering on July 29, 2009.

[3] W. Va. Code § 61-7-7(b)(1) prohibits any person "[w]ho has been convicted in this state or any other jurisdiction of a felony crime of violence against the person of another or of a felony sexual offense" from possessing a firearm.

## B. First Search Warrant: Search of Defendant's Room

A Preston County Magistrate reviewed Officer Stemple's affidavit and complaint,[4] found probable cause, and issued the first search warrant on December 1, 2015 (ECF No 29-1). That search warrant was executed on December 2, 2015 (ECF No. 29-2). In Defendant's room, officers did not find a rifle, but did find six (6) boxes of .22 long rifle ammunition. Id. Officers also seized a Rohm RG10 .22 short caliber pistol, three boxes of .22 short caliber ammunition, one box of .25 Auto caliber ammunition, an unspecified quantity of marijuana, and "numerous amounts of illegal drug paraphernalia and etc." including three used needles, a mortar and pestle with cocaine residue, a grinder with [m]arijuana, a used water bong, a weighing scale, and ten assorted drug smoking devices. Id. at 3. See also ECF No. 41-3 at 2.

---

[4] **Affidavit in support of first search warrant executed on December 2, 2015 (ECF No. 29-1)**
Premises:
1. The residence located at 47 Walnut Street, Masontown, WV 26542 (Preston County) – A green in color double wide trailer with yellowish colored shutters and a covered white porch attached to the front of the residence. The residence is fixed upon a white in color foundation. See Exhibit 1 for further. [Exhibit 1 is a photograph of the residence.]
2. A white in color, extended cab 1992 Ford Ranger bearing West Virginia registration 6YG638. This vehicle is registered to Scott Alan Thomas.
Facts:
Scott Alan Thomas resides at 47 Walnut Street in Masontown, WV, with his Aunt, Madeline Ennis. Thomas is a Sex Offender who was convicted of Felony "Attempted lewd or lascivious [behavior] on a child" between the ages of 6-12 in the State of Florida.
Per West Virginia State Code Section 61-7-7(b)(1) – Any person who has been convicted in this state or any other jurisdiction of a felony crime of violence against another person or of a felony sexual offense is prohibited from possessing firearms.
On November 30, 2015 Officer Hoefler and I responded to the address of 47 Walnut Street Masontown, WV for a welfare check. The complaint was that Scott Alan Thomas was informed that he was no longer welcome to stay with Madeline Ennis a few days prior. Allegedly, Thomas became irate when he received this information and has displayed aggressive behavior since. It was reported that Ennis had not been seen since that occurred. While conducting the welfare check, we spoke with Ennis and she advised that everything was okay, but that she was scared and wanted him to move out.
Subsequently, another confidential witness (CW) came forward with information stating that Scott Alan Thomas has a rifle in his possession at 47 Walnut Street in Masontown, WV. "CW" advised that the rifle was observed in Thomas' bedroom of the residence. It is reasonable to deduce that given the size of a rifle, it could also be concealed in Thomas' 1992 Ford Ranger.
Scott Alan Thomas has several previous convictions for carrying a concealed weapon and being a felon in possession of a firearm.
This warrant will aid investigators in determining if Scott Alan Thomas, a sex offender and convicted felon is currently and illegally in possession of a firearm.

On December 2, 2015, the same CW who had previously reported the rifle in Defendant's possession came forward with more information (ECF No. 29-2). CW advised MPD that Defendant had a storage unit at Reedsville Storage Buildings in Kingwood that he frequented on a regular basis, and identified Defendant's unit number as D12. Id. CW further advised that the rifle observed in Defendant's room was a "gray in color, synthetic style rifle with no scope." Id. at 3. Officers then applied for a second search warrant for Defendant's storage unit. Id. With this additional information and evidence pertaining to Defendant's reported rifle, Officer Stemple then completed a second Affidavit and Complaint for Search Warrant on December 2, 2016, seeking to search Defendant's storage unit for the rifle (ECF No. 29-2).

### C. Second Search Warrant: Search of Defendant's Storage Unit

A Preston County Magistrate reviewed Officer Stemple's second "Affidavit and Complaint for Search Warrant," found probable cause, and issued the second search warrant on December 3, 2015 (ECF No 29-1). That second search warrant was executed on December 3, 2015 (ECF No. 29-2). In Defendant's storage unit, officers found a .22 caliber Winchester rifle (Model 190) and a .22 caliber Armscor rifle (Model M1600) (ECF No. 32 at 3). The ammunition found in the Armscor rifle matched the ammunition found in Defendant's bedroom (ECF No. 32 at 4).

Defendant was subsequently indicted by a Grand Jury attending the United States District Court for the Northern District of West Virginia on April 5, 2016 (ECF No. 2). The two-count indictment charges Defendant with being a felon in possession of three (3) firearms; that is, "knowingly possess[ing] in and affecting commerce a firearm . . . a Rohm revolver, model RG10, .22 caliber, serial number 710137" (Count One), and "a Winchester rifle, model 190, .22 caliber, serial number B1127400, a[nd] Armscor rifle, model M1600, .22 caliber, serial number

A825728" (Count Two) all in violation of Title 18, United States Code, Sections 922(g)(1) and

924(a)(2) (ECF No. 2).

## II. Defendant's Motion to Suppress

Defendant argues that all evidence seized pursuant to both search warrants should be

suppressed because the first search warrant was not supported by probable cause (ECF No. 29) at

3. First, Defendant argues that probable cause fails because 1) the statements of the CW are

hearsay, are not sworn, and provide "no indicia of credibility" (ECF No. 29-1 at 5); 2) the

affidavit does not specify the relationship of CW to Defendant, or the circumstances or timing of

the observation of the rifle in Defendant's room; and 3) the affidavit does not address CW's

mental health, employment, criminal history, truthfulness, reliability, and motives to lie (ECF

No. 29).

Second, Defendant argues that Officer Stemple knowingly or recklessly included a

material falsehood in the affidavit for the first search warrant ("Scott Alan Thomas has several

previous convictions for carrying a concealed weapon and being a felon in possession of a

firearm") (ECF No. 29) (emphasis added). Defendant contends that this statement is both false

and material to the finding of probable cause, which precludes the availability of the *Leon* good

faith exception (ECF No. 29-1 at 3). As such, third, Defendant contends he is entitled to a Franks

hearing to develop evidence concerning whether Officer Stemple's use of the word "several"

was knowingly or recklessly false. Id.

## III. Government's Response to Defendant's Motion to Suppress

The Government argues that Defendant's Motion to Suppress should be denied without a

Franks hearing because 1) there was "ample" probable cause to support the issuance of the first

search warrant, 2) therefore the good faith exception does apply, and 3) Defendant has failed to

make the required "substantial preliminary showing" - a detailed offer of proof of the intentional or reckless nature of the falsity that is more than just conclusory - required to merit a <u>Franks</u> hearing (ECF No. 32).

More specifically, first, the Government notes that probable cause may be established from a variety of sources, ranging from anonymous tips to sworn, in-person statements from known individuals, so long as there are "sufficient indicia of reliability." (ECF No. 32 at 5-6). As such, the Government argues that probable cause was "ample" to support issuance of the first search warrant where the informant was an eyewitness. <u>Id</u>. at 1.

Second, the Government argues that Defendant has failed to make the "substantial preliminary showing" that an intentionally or recklessly false statement was made by Officer Stemple, and that the statement was essential to the probable cause finding (ECF No. 32 at 10). As such, the Government opposes a <u>Franks</u> hearing because Defendant has not met its burden to merit one, and even if he had, the facts of this case make a <u>Franks</u> hearing unnecessary to resolve Defendant's claims (ECF No. 32).

Third, the Government argues that the good faith exception to the exclusionary rule is both available and applicable because Officer Stemple's statements in the affidavit were not knowingly or recklessly false, and Officer Stemple's reliance on the first search warrant issued by the Magistrate in good faith was reasonable (ECF No. 32). Further, even if the Court finds otherwise, the statements at issue were not material or essential to a finding of probable cause. <u>Id</u>.

## IV. Defendant's Reply Memorandum

On August 25, 2016, Defendant filed a Reply Memorandum reiterating that probable cause for the first search warrant was lacking because the affidavit was based on hearsay from

unsworn witnesses, the Affidavit lacks detail regarding the witness' relationships to Defendant and the timing of the basis of witness' knowledge, and the statement that Defendant had "several" prior firearm-related convictions is false (ECF No. 41 at 2). Defendant further argues that Officer Stemple's presentation of relevant facts in the affidavit was purposely skewed to create a false impression of probable cause, concerning both the statement of Defendant's criminal history and the reasons for the initial welfare check. Id. Defendant attached Officer Stemple's subsequent Narrative Report regarding the events leading up to Defendant's arrest in support (ECF No. 41-3). Lastly, Defendant asserts that Officer Stemple's credibility is in question, and that "one cannot easily explain the false statements in the affidavit as mistakes, inadvertent errors or innocent oversights." Id. at 6.

## **V. Scope of Review**

As a preliminary matter, Defendant does not dispute probable cause for the second, except to the extent that probable cause for the second search warrant only existed because the first search warrant was erroneously granted and executed *without* probable cause ('fruit of the poisonous tree' – refer to Defendant's briefs,  ECF Nos. 29 and 41). As such, the undersigned's review is limited to the first search warrant.

Second, there are a number of issues that are unraised[5] and facts that are undisputed. Defendant does not dispute that he is a convicted felon who is prohibited from possessing a firearm (ECF No. 29 at 2). Defendant does not dispute that he has been convicted of carrying a concealed weapon and being a felon in possession of a firearm, among numerous other

---

[5] Neither party raised the issue of whether a search warrant was required. The record is also silent as to whether Ms. Ennis was ever asked if police could search Defendant's room. All that the record shows is that Officers did obtain a warrant before they conducted a search of Defendant's room.
Although Defendant argues a lack of probable cause to believe he currently possessed a firearm, he did not raise any arguments pertaining specifically to nexus that are independent of his overarching general arguments against probable cause.
As such, this opinion is limited to only those issues raised by the parties.

convictions. Defendant further concedes in his Reply Memorandum that the basis of knowledge for CW's report to MPD that Defendant "has a rifle in his possession" was her own first-hand observation of the rifle in Defendant's bedroom (ECF No. 41 at 3). Lastly, Defendant does not dispute in any of his pleadings that MPD received information about Defendant from two sources whose identities were known: the original Complainant, and the subsequent CW.

Third, a review of a probable cause determination is properly limited to the information presented to the judicial officer who issued the warrant. United States v. Wilhelm, 80 F. 3d. 116, 118 (4 Cir. 1996). To that end, in reviewing probable cause, the undersigned will consider information beyond what was included in the affidavit presented to the Preston County Magistrate only to the extent necessary to determine 1) whether the information in the affidavit for the first search warrant was false, and 2) whether Officer Stemple's credibility is in question. However, a Leon good faith exception analysis does permit consideration of information an officer had outside the four corners of the affidavit. U.S. v. McKenzie-Gude, 671 F.3d 452, 459 (4th Cir. 2011).

## VI. Discussion

Because Defendant's request for a Franks hearing and Defendant's arguments against the Leon good faith exception and probable cause are all based in whole or in part upon whether affidavit for the first search warrant contained false statements or material omissions, the undersigned begins this review with a determination of this key issue. The undersigned finds that Officer Stemple's statements in the affidavit are not false. Because the statements at issue are not false, it follows that they likewise cannot be intentionally or recklessly false. Further, even if the undersigned agreed with Defendant's characterization of the statements as false, the statements or omissions at issue are not intentional or reckless, and it is questionable whether they were

even negligent. In any event, none of the alleged statements or omissions were material or essential to a finding of probable cause. At worst, the statements can be considered merely lacking every possible detail, which does not offend the Fourth Amendment. As such, a <u>Franks</u> hearing is unwarranted.

## A.   A <u>**Franks**</u> **Hearing is not warranted**

Affidavits supporting search warrants are given a "strong 'presumption of validity.'" <u>U.S. v. Colkley</u>, 899 F.2d 297, 300 (4th Cir. 1990)(quoting in part <u>Franks v. Delaware</u>). Thus, there are limited and narrowly-defined circumstances in which a Defendant can attack a facially sufficient affidavit. <u>Franks v. Delaware</u>, 438 U.S. 154, 98 S.Ct. 2674 (1978). "To obtain an evidentiary hearing on the affidavit's integrity, a defendant must *first* make a 'substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit.'" (emphasis added) <u>U.S. v. Colkley</u>, 899 F.2d 297 at 300, quoting <u>Franks</u> at 155-56, 98 S.Ct. at 2676-77.

Further, to establish an affiant's material perjury or recklessness by preponderance of the evidence, a defendant's allegations must be "more than conclusory," "supported by more than a mere desire to cross-examine," and "accompanied by an offer of proof." <u>Franks</u>, 438 U.S. 154, 171 (1978). "Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." <u>Id</u>. Only deliberate falsity or reckless disregard of the affiant is relevant; not that of any nongovernmental informant. <u>Id</u>. The Court must then determine whether, excluding the offending information from the affidavit, sufficient facts remain to support a finding of probable cause; if so, no <u>Franks</u> hearing is required. <u>Id</u>. at 172.

The undersigned considered all evidence presented by Defendant in its Motion to Suppress [ECF No. 29], Reply Memorandum [ECF No. 41], and at the Motion hearing. The undersigned finds that Defendant failed to make the necessary substantial preliminary showing of material perjury or recklessness by Officer Stemple by a preponderance of the evidence, for the reasons set forth below.

**1. Defendant failed to show that Officer Stemple falsely stated his criminal history.**

Defendant contends the statement "Scott Alan Thomas has <u>several</u> previous convictions for carrying a concealed weapon and being a felon in possession of a firearm" is false - not because he was not convicted of those offenses, but due solely to Officer Stemple's use of the word "several." (ECF No. 41 at 3) (emphasis added). Significant doubts remain as to whether this is indeed false, even if strictly construed, for two reasons. First, Merriam-Webster's Dictionary defines "several" as "more than two but not very many."[6] Second, the precise number of Defendant's convictions has not been satisfactorily settled.

At the hearing on Defendant's Motion to Suppress on August 26, 2016, Counsel for the Defendant identified three alleged false statements in the affidavit. First, Defense counsel elaborated that an accurate statement would have been that "Defendant has *one* prior conviction for carrying a concealed weapon, and *one* prior conviction for being a felon in possession of a firearm."[7] While the Government neither necessarily disputes, nor necessarily concedes, the technical accuracy of this contention regarding those two convictions, Defendant is splitting hairs that are ultimately of no practical consequence.

---

[6] "Several." Merriam-Webster Online Dictionary. 2016. http://www.merriam-webster.com/dictionary/several (26 Aug. 2016).
[7] Oral Argument at 10:14, U.S. v. Thomas, 1:16cr23, August 26, 2016. Available on WVND internal courtroom streams.

As noted previously, Defendant's criminal history as reviewed by Officer Stemple spans forty-seven (47) pages of numerous arrests, convictions, and various other law enforcement contacts and notes from Florida, Ohio, Tennessee, and the FBI. The report contains a vast quantity of information that is neither clearly organized nor complete in parts. However, what *can* reasonably be ascertained from Defendant's criminal history report is that Defendant has two prior convictions in Florida in 2009 relating to unlawful possession or use of firearms: 1) carrying a concealed weapon, and 2) being a felon in possession of a firearm.

According to this report, Defendant apparently has four additional prior *arrests* pertaining to firearms violations for 1) improper exhibition of a firearm, 2) discharging a firearm in public, 3) failure to appear on the possession of firearm by a convicted felon charge, and 4) an arrest listed only as "FEL DELI W FUN CON WPN AMMO" (presumably, a charge for possession of a firearm by a convicted felon).[8] The record is unclear as to the status of those arrests (whether they ultimately resulted in convictions or not). Further, these are just Defendant's arrests and convictions relating to *firearms* alone, which comprise a small percentage of Defendant's total arrests and convictions for a variety of other misdemeanor and felony offenses.

At the August 26, 2016 hearing on Defendant's Motion to Suppress, the Government noted that while the Indictment accurately lists the two firearms convictions from 2008 in Defendant's criminal history, it does *not* concede that Defendant has *only* two such convictions - precisely because the record is unclear and such an admission is thus premature at best, and

---

[8]

| Arrest Date | Charge | Disposition | Agency | ECF. No. |
|---|---|---|---|---|
| 1. 10-14-86 | Improper Exhibition of a Firearm | Unclear | New Smyrna Beach, FL | 41-2 at 26-7 |
| 2. 10-14-86 | Discharging a Firearm in Public | Unclear | New Smyrna Beach, FL | 41-2 at 27 |
| 3. 11-15-08 | Felon in Possession of Firearm | Conviction | New Smyrna Beach, FL | 41-2 at 44-45 |
| 4. 11-15-08 | Carrying a Concealed Weapon | Conviction | New Smyrna Beach, FL | 41-2 at 44-45 |
| 5. 05-28-09 | Failure to Appear (Felon Possess.) | Unclear | New Smyrna Beach, FL | 41-2 at 8 |
| 6. 08-14-11 | Fel Deli W Gun Con Wpn Ammo | Unclear | NW FL Reception Ctr. | 41-2 at 13 |

potentially inaccurate.[9] Although it was the Defendant himself who provided the 47-page criminal history report to the Court which introduced the four prior arrests at issue, Defendant has not provided the Court with clarification or additional evidence as to the status of these prior relevant arrests.

This Court is sensitive to the distinctions between an arrest and a conviction, and the implications each should properly have for Defendant. In an ideal case, with an ideal record, Defendant's criminal history *would* be clear. That is unfortunately not the case here. Because Defendant has not yet shown that Officer Stemple's use of the word "several" is in fact false, the undersigned cannot find so at this time.

### 2. Defendant failed to show the requisite intent for a <u>Franks</u> hearing

In order to be granted a <u>Franks</u> hearing, Defendant would also have to make a "substantial preliminary showing" that Officer Stemple either knowingly and intentionally made a false statement, or was reckless with regard to the truth. Defendant has failed to do so. "'[M]ere[] negligen[ce] in . . . recording the facts relevant to a probable-cause determination' is not enough" to merit a <u>Franks</u> hearing. <u>Colkley</u>, 899 U.S. at 301 (1990) (quoting <u>Franks</u>, 438 U.S. at 171, 98 S.Ct. at 2684), because inadvertent omissions or slight variations that are not consciously done cannot be knowing or intentional.

The record shows that prior to applying for the first search warrant, Officer Stemple obtained and reviewed Defendant's voluminous criminal history and noted in his narrative report (also submitted to this Court by Defendant), and that he understood Defendant to have "previous convictions for carrying a concealed weapon, discharging a firearm in public and being a prohibited person in possession of a firearm." (ECF No. 41-3 at 2).

---

[9] Oral Argument at 9:53, U.S. v. Thomas, 1:16cr23, August 26, 2016. Available on WVND internal courtroom streams.

Given the quantity of information and lack of precise clarity contained in that report, the numerous instances in which the word "firearm" appears throughout the report, and two convictions plus four additional arrests for firearm-related offenses, it appears far more probable that Officer Stemple made reasonable efforts to be accurate in his statement in good faith than that he was intentionally dishonest or reckless. Given that the record still is not entirely clear on the issue, the undersigned finds it difficult to fairly characterize Officer Stemple's use of the word "several" as rising to negligence, let alone recklessness or intentional dishonesty. Even if it was determined that the four arrests did *not* lead to convictions, under the circumstances and the state of the record, Officer Stemple could certainly be forgiven for interpreting otherwise.

Defendant also raises the issue of Officer Stemple's credibility as grounds to infer that his intent in making false statements in the affidavit was to mislead (ECF No. 41 at 4). Defendant submitted records stemming from an arrest of Officer Stemple in 2013 pertaining to an off-duty, domestic dispute with his then-girlfriend while reportedly intoxicated (ECF No. 41-1). Defendant claims that because Officer Stemple's statement of events given to responding officers differed from that of his then-girlfriend, this demonstrates a lack of credibility that this Court should extend to his statements in the affidavit. Id. This may be sufficient to give pause, but it is a brief one. In this incident, Officer Stemple was by all accounts off-duty, and extremely intoxicated to the point of nearing sleep while being questioned (ECF No. 41-1).

Defendant does not argue that Officer Stemple was intoxicated at the time he wrote the affidavit in this case, and he was, presumably, on-duty. Defendant has provided no instances in which Officer Stemple's veracity as it pertains to his performance of his duties as an officer of the law was previously in question, that could fairly give rise to an inference that Officer Stemple has a proclivity to be untruthful in performance of his work. Further, Defendant has not

sufficiently shown that Officer Stemple was untruthful in this current instance. This claim lacks sufficient support to affect Officer Stemple's credibility as to whether he faithfully reported informants' statements to the magistrate as they were given to him.

**3. Contested parts of the Affidavit are not material to a finding of probable cause**

Even if it was determined that the use of the word "several" was technically false, the Court "will not invalidate a warrant 'by interpreting [an] affidavit[t] in a hypertechnical, rather than commonsense manner.'" U.S. v. Lalor, 996 F.2d 1578, 1581 (4th Cir. 1993) (quoting in part Illinois v. Gates, 462 U.S. 213, 238). Even if the affidavit stated that Defendant had "one prior concealed weapon conviction and one prior felon in possession conviction," the inference a Magistrate would draw from those statements would be virtually identical: that Defendant has a history of firearms violations (which is indisputably true). Further, even if the affidavit had been worded in precisely the manner Defendant argues, Defendant's two undisputed firearms-related convictions would certainly suffice to support probable cause, under the totality of the circumstances. Defendant's allegations remain merely conclusory because he has not offered proof that the use of the word "several" is false (let alone knowingly or intentionally so), or that anything in the affidavit was contrary to Officer Stemple's knowledge or understanding at the time.

Defendant also argues that the rationale for the welfare check was worded in such a manner as to suggest that Defendant was angry *as a result of* being asked to move out.[10] Defendant maintains that this interpretation, compared to Defendant being asked to leave *because* he had been angry, created a false sense of urgency in the magistrate. Defendant freely

---

[10] Oral Argument at 9:45, U.S. v. Thomas, 1:16cr23, August 26, 2016. Available on WVND internal courtroom streams.

admits that he *had* in fact been angry and drinking, and he does not dispute that his anger caused Ms. Ennis to be afraid.

Defendant has not shown that any alleged omissions were material. In fact, it is clear that the information Officer Stemple left out of the affidavit would have served only to *strengthen* probable cause had it been included. Thus, Defendant has failed to make the "substantial preliminary showing" of an intentionally or recklessly false statement material to the finding of probable cause to warrant a <u>Franks</u> hearing. Even if he had, a <u>Franks</u> hearing is still unnwarranted because the contested portions are not material to probable cause. As such, the undersigned proceeds to a review of probable cause, considering the affidavit and first search warrant in its entirety.

### B.     <u>Probable Cause</u>

The Fourth Amendment to the Constitution of the United States provides that "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized." U.S. Const. Amend. IV.

Whether the issuing judge had probable cause to issue a search warrant depends upon whether, from a "totality of the circumstances" presented, there was a "fair probability that contraband or evidence of a crime" would be found in the places to be searched. <u>Illinois v. Gates</u>, 462 U.S. 213, 238 (1983). The test on review is whether there is substantial evidence in the record supporting the [judicial officer's] decision to issue the warrant. <u>Massachusetts v. Upton</u>, 466 U.S. 727, 728 (1984). To that end, the reviewing court does not conduct a *de novo* review, but instead limits itself to the information presented to the judicial officer who issued the

warrant. Id. See also United States v. Wilhelm, 80 F. 3d. 116, 118 (4 Cir. 1996). In a review of an issued search warrant, the issuing judicial officer's probable cause determination is given "great deference." United States v. Blackwood, 913 F.2d 139, 142 (4 Cir. 1990).

**1. The Affidavit for the first Search Warrant contained sufficient facts to permit an inference of probable cause.**

Defendant argues that the statements made to MPD by the Complainant and CW as reported in the affidavit did not provide sufficient indicia of reliability because they were hearsay and not sworn (ECF No. 29). Further, Defendant argues that the affidavit failed to address their trustworthiness, their relationship to Defendant, and the circumstances or timing of the observation. Id. Both parties agree that the affidavit could and ideally should have been more specific. However, the Government contends that despite this, the facts in the affidavit nonetheless can and do support a finding of probable cause. For the following reasons, the undersigned agrees.

 "It is well settled that probable cause may be founded upon hearsay and information received from informants." Franks v. Delaware, 438 U.S. 154, 165 (1978). Under the "totality of the circumstances" test, two key factors include informants' 1) veracity or reliability and 2) basis of knowledge. Gates, supra. When determining probable cause based on an informant's hearsay, "the degree to which an informant's story is corroborated may also be an important factor." U.S. v. Hodge, 354 F.3d 305, 309 (4th Cir. 2004). Informants may be anonymous (identities unknown to law enforcement), or merely confidential (known to law enforcement, but not disclosed).

Generally, courts afford a presumption of reliability to confidential witnesses who are *citizen* informants – whose basis of knowledge is innocent eyewitness observation, rather than their involvement in the crime. See U.S. v. Campbell, 723 F.2d 1017 (1st Cir. 1984) (holding that

an informant who came forward with information, had no police record or motive to lie, and provided his name and address to police was a citizen informant). See also Mills v. Graves, 930 F.2d 729 (9th Cir. 1991) (upholding probable cause based largely on citizen informant's reported eyewitness observation where informant had no criminal history and was not a regular police informant). That is, "if an unquestionably honest citizen comes forward with a report of criminal activity – which if fabricated would subject him to criminal liability – rigorous scrutiny of the basis of his knowledge [is] unnecessary." Illinois v. Gates, 462 U.S. at 233-34. Thus, confidential informants whose identities are known are afforded a greater presumption of reliability than anonymous informants. U.S. v. DeQuasie, 373 F.3d 509 (4th Cir. 2004).

### i. Informants' veracity and reliability

Here, the names and identities of the Complainant and CW were not included in the affidavit, and it did not explicitly specify whether these two individuals were anonymous or known to MPD. Nonetheless, it was reasonable for the Magistrate to infer that their identities were known to MPD and that they had a relationship with Ms. Ennis because the facts in the affidavit support both inferences. First, CW is explicitly referred to as a *confidential* witness, which supports an inference that her identity was known to law enforcement and simply not disclosed. (Their identities were in fact known to MPD; CW was Ms. Ennis' daughter, and the Complainant was the Mayor of the town where Ms. Ennis and Defendant resided.) It is likewise reasonable to infer that, in a situation where firearms and conflict are alleged to be involved and Ms. Ennis was "scared," that the informants may have been justifiably hesitant to have their identities disclosed beyond the officers who were investigating their reports. In the small community where Defendant and Ms. Ennis lived, it is reasonable to infer that there may have

been valid reasons not to disclose the informants' identities in the affidavit other than that they were unknown to MPD.

In addition, an informant who has a personal interest in another's safety can be afforded heightened reliability, because "personal interest can create 'a strong motive to supply accurate information.'" U.S. v. DeQuasie, 373 F.3d 509, 523 (4th Cir. 2004) (quoting U.S. v. Miller, 925 F.2d 695, 699 (4th Cir. 1991). As such, the affidavit contained sufficient facts to permit a reasonable inference that the informants were reliable and the information provided was truthful. A report that Ms. Ennis had not been seen in a few days when typically seen by the informant daily easily permits an inference that the informant has a close relationship with Ms. Ennis, strengthened by apparent knowledge of Ms. Ennis' problems at home with her nephew.

This case presents a similar factual scenario as that in U.S. v. DeQuasie. 373 F.3d 509 (4th Cir. 2004). In DeQuasie, as here, a known informant whose wife had not been seen for a few days and who expressed his reasons for concern to law enforcement supported probable cause, even when based upon hearsay from a third party. Defendant argues that because MPD determined at the welfare check prior to application for the warrant that Ms. Ennis was okay, concerns for her well-being past this point were unfounded. The undersigned disagrees. Ms. Ennis was unharmed when MPD performed the welfare check, but in that same conversation, she herself told the officers that she was "scared." She confirmed Complainant's and CW's reports that Defendant had been "irate" and "aggressive." She further asked officers to continue to check on her periodically until Defendant was gone. This corroboration of Defendant's reported behavior, Ms. Ennis' self-reports of continued and present fear, the report of a firearm in the residence and Defendant's criminal history -- not only of possession of firearms but also crimes against others -- *more* than suffice to warrant a continued concern for the implications

Defendant's possession of a firearm might have. The Magistrate was well within the bounds of reasonableness in apparently inferring this as well.

### ii. Basis of Knowledge

The affidavit further makes clear that the basis of CW's report was her own first-hand observation – not as a participant, but as an innocent eyewitness of Defendant's criminal possession of the firearm. CW's report provided details such as the firearm's location (Defendant's bedroom), the type of firearm (rifle), as well as details such as its color and that it did not have a scope. The affidavit further specified the basis of CW's knowledge was observation, and Defendant does not dispute this.

### iii. Corroboration

"Although the informant's veracity, reliability, and basis or knowledge are relevant, they are no longer independent requirements." Gates, 462 U.S. at 230. "In evaluating whether an informant's tip establishes probable cause, the degree to which the report is corroborated is an important consideration." U.S. v. Wilhelm, 80 F.3d 116, 119 (4th Cir. 1996) (quoting U.S. v. Lalor, 996 F.2d 1578, 1581 (4th Cir. 1993). Corroboration of innocent details in an informant's report is meaningful in establishing probable cause, because it "tends to indicate that other aspects of the report are also correct." Lalor, citing Gates, 462 U.S. at 244, 103 S.Ct at 2335. Corroboration of prior criminal history relevant to an informant's tip can also support a substantial basis for reliability. Lalor, 966 U.S. at 1581 (Defendant's prior arrest for cocaine possession five days before warrant was issued verifies involvement in drug activity; along with corroboration of address, vehicle, and alias, constitutes a "substantial basis" for reliability).

Here, CW's report corroborated information reported by Complainant, including address, residents of the home, and the circumstances for concern. Additionally, Officer Stemple

independently corroborated CW's report that Defendant resided with Ms. Ennis at 47 Walnut Street in Masontown. Officer Stemple further corroborated that Defendant had a criminal history that corroborated CW's report, including his prior felony convictions that made it illegal to possess a firearm, and prior convictions for possessing a firearm illegally. While it is true that Defendant's prior convictions were approximately seven years prior to the investigation, as opposed to five days prior as in Lalor, this detail seems neither dispositive nor particularly persuasive. See also U.S. v. Archie, 173 F.3d 852 (4th Cir. 1998) (upholding search warrant where affidavit did not specifically state the time period during which the activity occurred, but the magistrate could have reasonably inferred that the criminal activity was ongoing at the time the affidavit was written and presented). While the status of Defendant's arrests versus convictions for firearm offenses remains unclear, what his criminal history indisputably demonstrates is that over the past twenty years, Defendant has continued to possess firearms in such a manner as to attract law enforcement intervention to varying extents. This made it more likely that Defendant may have retained the firearm.[11]

As a final observation, it is appropriate to consider corroboration in the context of the crime alleged. When an individual is reported to be selling narcotics, for example, officers have additional means of corroboration reasonably available to them, such as a statement from a buyer (because sale requires two parties, a seller and buyer), or setting up a controlled buy. Narcotics also move frequently and quickly from person to person in a supply chain, and this can potentially observed via surveillance of the location reported.

Here, there are only two elements to the crime Defendant was reported to be committing: being a convicted felon, and possessing a firearm. At the time Officer Stemple applied for the

---

[11] The First Circuit has explicitly recognized that a confidential informant who supplies information showing Defendant is likely to retain items for a long time, can support a finding of probable cause and conviction for possession of a firearm. See U.S. v. Beckett, 321 F.3d 26 (1st Cir. 2003).

first search warrant, he had already corroborated the first element; that Defendant was in fact a convicted felon who was prohibited from possessing firearms. He had corroborated that Defendant had previously been convicted of possessing a firearm while prohibited. He had corroborated innocent facts reported by CW that made her report of observing a firearm in Defendant's possession more reliable and probable. All that remained at that point was the outstanding question of whether the rifle was in fact in Defendant's possession.

Defendant does not suggest what other possible steps for corroboration Officer Stemple could or should have taken in order to establish probable cause. Nonetheless, "probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." Gates, 462 U.S. at Footnote 13. The undersigned agrees with the issuing Magistrate that more was not required, and even if it was, it is difficult to identify what else Officer Stemple could or should reasonably have done to verify possession apart from obtaining a search warrant.

### iv.  Timing and staleness

Defendant argues that Officer Stemple falsely stated in the affidavit for the first search warrant 1) that Defendant "has" a gun in his possession at the time of the application for the warrant, and 2) the reasons for the initial welfare check on Ms. Ennis (ECF No. 41). First, Defendant contends that Officer Stemple had no reasonable grounds to believe that the gun was *currently* in Defendant's possession, or to lead the issuing Magistrate to believe the same (ECF No. 41 at 3). Officer Stemple wrote "CW came forward with information stating that Scott Alan Thomas has a rifle in his possession at 47 Walnut Street in Masontown, WV" and "advised that the rifle was observed in Thomas' bedroom of the residence." (ECF No. 29-1 at 3). The affidavit does not specify any further detail as to when or how recently CW made that observation.

Defense counsel's office contacted CW and determined that her observation was in "Summer 2015," a few months prior to the welfare check and search warrant (ECF No. 41 at 10). Defendant argues that had the timing of the observation been included in the Affidavit, the Magistrate would not have issued the search warrant because the observation was stale. Id. Had Defendant provided any evidence that Officer Stemple had any reason to suspect that the observation was *not* recent based on CW's statements to him, this issue may warrant additional scrutiny. However, the record as it stands reflects only that CW told Officer Stemple that she had observed a rifle in Defendant's bedroom, and Defendant does not dispute that this much is accurate. The record does not support a finding of a material omission on Officer Stemple's part. At worst, the record supports a failure to ask follow up questions of CW to determine the precise date of observation.

Defendant argues that because CW confronted Defendant about the rifle and "told him to get rid of it," this put Officer Stemple on notice that Defendant no longer had the rifle in his possession. The undersigned finds it difficult to agree. Officer Stemple was well aware of Defendant's history of knowingly possessing firearms even when prohibited by law from doing so. Defendant does not explain why he believes Officer Stemple should have concluded that Defendant would have promptly obeyed one woman's directive to get rid of a firearm when not even law enforcement and the criminal justice system have been able to keep him from doing so, instead of concluding that Defendant may plausibly still have the firearm. Additionally, had the evidence in question been of a different nature - drugs, for example, which are typically quickly consumed or sold - this assertion might carry some weight. Firearms, however, tend to be retained for long periods of time. The record lacks support for the hypothesis that Officer Stemple was intentionally misleading in his Affidavit.

The record further provides no indication that Officer Stemple reported what CW told him in any way that was inconsistent with her statements. While Defendant may take issue with *what* CW said to Officer Stemple and *how* she phrased it, that is not equivalent to dishonesty or misconduct on Officer Stemple's part. Given that defense counsel's office had apparently spoken to CW recently, such claims could have been properly supported by testimony or evidence from CW (as someone who would have first-hand knowledge of her statements to Officer Stemple). In the absence of any evidence to the contrary, the undersigned cannot reasonably conclude that Officer Stemple did anything other than report what CW told him, truthfully and accurately.

As a final observation, the record does clearly show that Officer Stemple applied for the first search warrant within 24 hours of receiving CW's report. Even if, *arguendo*, CW's information could have been considered stale, it was certainly not stale to Officer Stemple. He acted on the information as soon as he received it, and the information was fresh to him at the time he presented it to the Magistrate. The circumstances suggest that Officer Stemple acted in good faith in relaying what was reported to him in a timely manner, and Defendant has not offered sufficient evidence to show otherwise.

Considering the totality of the circumstances, what was provided in the affidavit, and affording deference to the issuing Magistrate's finding of probable cause, the record provides sufficient facts to support probable cause. Therefore, suppression of the evidence obtained from execution of the search warrants is unwarranted. Even if it probable cause did not exist, the undersigned finds that the good faith exception would apply for the reasons set forth below.

## C.     <u>Good Faith Exception</u>

The good faith exception to the exclusionary rule articulated in <u>Leon</u> provides that evidence from an invalidated search warrant should not be suppressed unless a "well trained

officer would have known that the search was illegal despite the magistrate's authorization." 468 U.S. at 922, 104 S.Ct. 3405. The Supreme Court identified four circumstances in which this could occur: if 1) "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth," 2) "the issuing magistrate wholly abandoned his judicial role in the manner condemned in Lo-Ji Sales,"[12], 3) "the affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," or (4) the warrant is "so facially deficient – *i.e.*, in failing to particularize the place to be searched or the things to be seized – that the executing officers cannot reasonably presume it to be valid." U.S. v. Leon, 468 U.S. 897, 923 (1984). Further, reviewing courts may "look outside the four corners of a deficient affidavit when determining, in light of all the circumstances, whether an officer's reliance on the issuing warrant was objectively reasonable." U.S. v. McKenzie-Gude, 671 F.3d 452, 459 (4th Cir. 2011).

In his Motion to Suppress, Defendant alleges that "at least two of these situations are present in this case such that the good faith exception should not apply." (ECF No. 29 at 6). Defendant does not argue that the issuing magistrate wholly abandoned her judicial role, nor is there any evidence to suggest that she did. Defendant does not argue that the affidavit was so facially deficient that officers could not reasonably presume it to be valid, and it was not. The undersigned thus turns to the two circumstances that Defendant principally argues negate the availability of the Leon good faith exception.

### 1. The Affidavit does not contain false or misleading statements

For the reasons elaborated on at length above, Defendant has failed to show that any statements Officer Stemple made in the affidavit were false, any intentional or reckless

---

[12] Lo-Ji Sales, Inc., v. New York, 442 U.S. 319, 99 S.Ct. 2319 (1979)

behavior on Officer Stemple's part, or that the magistrate was misled. As such, the undersigned likewise finds this claim without merit.

**2. The Affidavit is not so lacking in indicia of probable cause as to render faith in its existence unreasonable**

Defendant argues that this is a case of a "bare bones" or conclusory affidavit, which contain an affiant's mere statement of belief of probable cause instead of "facts and circumstances that permit a Magistrate to independently determine probable cause." U.S. v. Wilhelm, 80 F.3d 116 (4th Cir. 1996). The undersigned disagrees. An affidavit describing an *anonymous* informant as a "concerned citizen" and "mature person with personal connections with the suspects" who "projected a truthfull [sic] demeanor," without providing any underlying facts to support those conclusions is "bare bones" or conclusory. Id. at 120. Here, the affidavit is void of any such conclusions regarding trustworthiness of the informants, but rather reported only what Officer Stemple was told, leaving the Magistrate to draw her own conclusions. The informants were not anonymous, but rather confidential. The record thus supports an inference of trustworthiness.

## RECOMMENDATION

For all the above reasons, the undersigned finds that the evidence seized pursuant to the first and second search warrants in this case was all lawfully seized. As such, the undersigned recommends Defendant's Motion to Suppress (ECF No. 29) be **DENIED,** and Defendant's request for a Franks hearing likewise be **DENIED**.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.

A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such report and recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to counsel of record.

Respectfully submitted this 1st day of September, 2016.

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE